**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Pamela Prescott, Esq. (SBN: 328243)
pamela@kazlg.com
245 Fischer Ave., Unit D1
Costa Mesa, California 92626
Telephone: (800)400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Judy Cho

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JUDY CHO, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**GENERAL MOTORS COMPANY,**<br><br>**Defendant.** | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>  1) **CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA"), CAL. CIV. CODE §§ 1750,** *et seq.***;**<br>  2) **CALIFORNIA'S UNFAIR CONPETITION LAW ("UCL"), CAL. BUS. PROF. CODE §§ 17200,** *et seq.***;**<br>  3) **THE SONG-BEVERLY CONSUMER WARRANTY ACT ("SBCWA"), CAL. CIV. CODE §§ 1790,** *et seq.***;**<br>  4) **BREACH OF IMPLIED WARRANTY;**<br>  5) **FRAUDULENT CONCEALMENT; AND,**<br>  6) **UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. This action concerns a material safety defect in tens of thousands of Chevrolet Camaros manufactured by defendant General Motors Company ("GM" or "Defendant") from 2010 to the present that utilize keyless entry to lock, unlock, and/or start the vehicle (the "Class Vehicles"), all of which have a hackable key fob system (the "Defect").

2. Some key fobs or "smart keys" use nonsecure commercial radio waves that communicate to the vehicle when the fob is near or inside of it.[1] These radio waves enable keyless entry utilizing a key fob or smart key for unlocking and locking the vehicle doors and in some cases, starting the ignition.

3. The Class Vehicles have been, and still are, being targeted due to the Defect, which allows these Chevrolet Camaro vehicles, that utilize keyless entry, to be easily unlocked and stolen without the car's security alarm being set off.

4. The signal between the key fob and the car's computer can be easily intercepted by a nearby electronic device, which records and the replays the signal, tricking the car into believing the genuine key fob is in close proximity. Consequently, within a matter of 20-30 seconds, the intercepted signal can be utilized to unlock the car and start the ignition.[2]

5. This key replication technique has led to an influx of tutorial videos and tips across the internet that provide easy to follow directions on how to successfully utilize this method to steal cars such as the Chevrolet Camaro.[3]

6. Upon information and belief, Defendant has long known about these Defects

---

[1] https://www.freep.com/story/money/cars/2023/12/30/stop-car-hacking-by-keeping-your-key-fob-in-a-metal-coffee-can/72048564007/ (last accessed April 3, 2024).

[2] https://www.locksmiths.co.uk/faq/keyless-car-theft/ (last accessed April 3, 2024).

[3] *See, e.g.,* https://www.youtube.com/watch?v=aSL3Xy_OGP8 (last accessed April 3, 2024).

and/or at a minimum the inherent risks associated with utilizing a keyless entry system capable of being intercepted.

7.    "Los Angeles Police Department officials are warning the public about a recent trend they've noticed in which thieves are targeting Chevrolet Camaros."[4]

8.    This particular car has become a "hot item to begin 2024, with recent data showing that 90 have been stolen within Los Angeles city limits — a 1,185% increase from 2023 — when there were only seven stolen."

9.    "Police believe thieves have started using key clone devices to steal new models. The devices are about the size of cell phones. They are capable of picking up the signal of a nearby key fob and cloning it, giving thieves access to the car."[5]

10.    The Los Angeles Police Department recently acknowledge publicly that Chevrolet Camaro thefts are high on their radar.[6] The LAPD spokesperson noted, "[w]e can tell individual consumers, 'there's a flaw with your car, these are ways… to protect [it] from being stolen.' But what we need is action higher up at the manufacturer level to make sure that it isn't so easy to clone those fobs to being with."[7]

11.    Despite warnings issued by police in many municipalities, upon information and belief, Defendant has taken *no action* to prevent or rectify the harm done to consumers.

12.    Plaintiff and the Class suffered an economic injury as a result of the Defect and Defendant's concealments about the safety and security of the Class Vehicles at the time of purchase.

13.    Accordingly, Plaintiff brings this action on behalf of herself, and other

---

[4] https://www.cbsnews.com/losangeles/news/lapd-issues-warning-over-spike-in-chevy-camaro-thefts/ (last accessed April 11, 2024).

[5] *Id.*

[6] https://www.cbsnews.com/sanfrancisco/news/hot-property-chevy-camaros-rise-top-car-thieves-hit-list-california/ (last accessed April 4, 2024).

[7] *Id.*

similarly situated individuals against Defendant regarding the Defect.

## JURISDICTION AND VENUE

14. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) because: (a) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (b) the proposed Class and Sub-Class consists of more than 100 Class Members; (c) minimal diversity exists; and (d) none of the exceptions under the subsection apply to this action.

15. This Court has personal jurisdiction over Defendant because Defendant conducts business within the County of Orange, State of California; and Plaintiff was injured in the County of Orange, where Plaintiff resides.

16. Defendant has sufficient minimum contacts in and with the County of Orange, California, and has intentionally availed itself of the markets within California through the sale and provision of its goods and services to render the exercise of jurisdiction by this Court reasonable.

17. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred within this judicial district and Defendant conducts substantial business within this judicial district and Plaintiff resides within this district.

## PARTIES

18. Plaintiff is, and at all times mentioned herein was, a natural person, individual citizen and resident of the County of Orange, State of California.

19. Upon information and belief, Defendant is a Delaware corporation, with its principal place of business located Detroit, Michigan. Plaintiff is further informed and believes that Defendant conducts business throughout the State of California, including within the County of Orange.

20.     Upon information and belief, Defendant owns and manufactures Chevrolet vehicles, including the Chevrolet Camaro.

## GENERAL ALLEGATION

**A.     Background on Keyless Entry**

21.     Upon information and belief, Defendant designs, manufactures, and markets the Class Vehicles.

22.     Plaintiff is further informed and believes that the Class Vehicles, as defined herein, each contain keyless car technology that is susceptible to being hacked. Thus, all Class Vehicles suffer from this same Defect.

23.     Keyless car technology works by transmitting low-frequency singles between a keyless electronic fob and the vehicle's computer.[8]

24.     The signal allows the car to unlock and the engine to start when the signal from the key fob is in close proximity.[9]

25.     Keyless car theft, also called "relay car theft," is when an individual hacks into the car's signal through its corresponding key fob.[10]

26.     The key fob's unique code is transmitted into the cloning device and subsequently used to deceive the car into thinking the authentic key fob is nearby.[11] Then, because the vehicle thinks the authentic key is near, the vehicle unlocks, and the engine can be started, all without the car's alarm going off.

---

[8] https://www.progressive.com/answers/keyless-ignition-cars/ (last accessed April 3, 2024).
[9] *Id.*
[10] *See* https://www.nbclosangeles.com/news/local/chevy-camara-car-thefts-key-fob-clones-lapd/3352959/ (last accessed April 3, 2024).
[11] https://www.locksmiths.co.uk/faq/keyless-car-theft/ (last accessed April 3, 2024).

27.     Interception devices are readily available for purchase at relatively low costs on platforms such as Amazon, eBay and other online stores.[12] These devices may be as compact as the average smart phone.[13]

28.     The key fob, and its code, are an essential component of the Class Vehicles as these are the primary means of access and operation of the car. Intercepting the code grants hackers the ability to gain access into the vehicle, start the engine, and drive away without activating the alarm.

29.     Upon information and belief, Defendant has known of this Defect and failed to prioritize advancing the security of the Class Vehicles.

30.     Other automobile manufactures, like Jaguar and Range Rover, have developed ultra-wide band protection to counter relay car theft, while Defendant has remained silent and failed to act or even notify the public of the safety risks.[14]

**B.      The Hackable Key Fobs in Defendant's Vehicles Has Led to Thefts and Car Break-Ins**

31.      Upon information and belief, every Chevrolet Camaro sold between 2010 to 2023 that utilizes keyless entry technology were designed with hackable key fob technology.

32.     For instance, the online user manual for the 2023 Chevrolet Camaro notes the car comes standardly equipped with "Keyless Open and Start – includes extended-range Remote Keyless Entry and panic feature."

33.     According to Chevrolet.com, the Keyless Open and Keyless Start can "lock and unlock doors, access the liftgate or trunk, and start your vehicle without removing your key fob from your pocket or bag, as long as it's within range."[15]

---

[12] https://leasing.com/guides/relay-car-theft-what-is-it-and-how-can-you-avoid-it/. (last accessed April 3, 2024).
[13] https://www.nbclosangeles.com/news/local/chevy-camara-car-thefts-key-fob-clones-lapd/3352959/ (last accessed April 3, 2024).
[14] https://www.fleetnews.co.uk/news/range-rover-thefts-fall-after-security-enhanced-with-10m-investment (last accessed April 3, 2024).
[15]  https://www.chevrolet.com/support/vehicle/security/keyless-open-start (last

34.     "When you approach the vehicle with the key fob within a three-foot range of the door, pressing the button on the driver's door handle once will unlock the driver's door; pressing it again within five seconds will unlock all doors."[16]

35.     Consumers can also download an application to their smartphone that allows them to "remote[ly] start, unlock and lock [the] vehicle, view [the] fuel life and tire pressure, and more . . ."[17]

36.     Similarly, the Owner's Manual for the 2010 Chevrolet Camaro also includes information on Remote Keyless Entry as well as Remote Vehicle Start.

37.     Upon information and belief, Chevrolet Camaros from 2010 to the present all have some form of keyless entry capabilities.

38.     Due to the Defect in Class Vehicles, along with other vehicles containing the same defect, social media trends contributed to a significant increase of car thefts across the county. These trends highlight how easy it is to steal keyless entry vehicles, exasperating the threat Class Vehicle owners face.[18]

39.      Law enforcement across California has reported an increase in car thefts in the following localities:

    a.  Los Angeles, California saw a 1,285% theft increase in 2024 compared to 2023, reporting 90 thefts already in the first three months of 2024.[19]

    b.  San Francisco, California saw a 119% increase in thefts from 2022 to 2023.[20] Reported numbers for 2024 are expected to far surpass those of

---

accessed April 11, 2024).

[16] *Id.*

[17] https://www.chevrolet.com/support/vehicle/smartphone-connections/mychevrolet-mobile-app/instructions (last accessed April 12, 2024).

[18] *See* https://www.cnbc.com/2022/09/08/tiktok-challenge-spurs-rise-in-thefts-of-kia-hyundai-cars.html (last accessed April 3, 2024) ("TikTok challenge spurs rise in thefts of Kia, Hyundai cars").

[19] https://www.lapdonline.org/newsroom/key-clone-devices-utilized-in-camaro-thefts-nr24077dc/ (last accessed April 3, 2024).

[20] https://patch.com/california/across-ca/hot-property-chevy-camaro-rises-top-car-thieves-hit-list-california (last accessed April 3, 2024).

2023, with 15 thefts already this year.[21]

40.     This is not an exhaustive list of all the areas seeing an increase in car thefts due to Defendant's Defects. Across the country, at least hundreds of individuals are being targeted due to the hackable keyless entry technology.[22]

**C.     Defendant Fails to Address the Defect**

41.     Upon information and belief, Defendant knew (or at the very least should know) of the Defect in the Class Vehicles yet has failed to disclose the Defect to consumers.

42.     Plaintiff is further informed and believes that Defendant concealed and/or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiff and Class Members, in Defendant's advertising, labeling or otherwise that the Class Vehicles were, and still are, defective and are not fit for the ordinary purposes for which the vehicles are used in that they are easy to steal, unsafe, and worth less than they should be, if they were not defective.

43.     Rather than address the Defect, Defendant has remained silent on the issue while thefts continue to soar.

**D.     Defendant's Misconduct Injured Plaintiff and the Class**

44.     Plaintiff purchased a brand new 2023 Chevrolet Camaro (ending in VIN Number 1896) from Connell Chevrolet located at 2828 Harbor Blvd, Costa Mesa, CA 92626 on or around October 16, 2022.

45.     Unbeknownst to Plaintiff at the time of the purchase of her vehicle, she suffered an economic injury due to the Defect (that was concealed at the time of purchase) in the Chevrolet Camaro.

46.     As would a typical consumer, Plaintiff reasonably believed upon purchase

---

[21] *Id.*

[22] https://www.cbsnews.com/texas/news/north-texas-man-blasts-dpd-after-tracking-down-his-own-stolen-car/; https://wsvn.com/news/local/miami-dade/video-shows-thief-stealing-camaro-from-miami-driveway/ (last accessed April 3, 2024).

that the Chevrolet Camaro's security system (including the accompanying key fob and keyless entry system) would be fit for the ordinary purpose for which its security system was used, i.e., protecting the vehicle, and whatever was inside of it, from theft.

47.     However, Plaintiff found out the hard way that the key fob security system on her Chevrolet Camaro was *not* fit for the ordinary purpose for which it was used because of the Defect, making her car a target for theft.

48.     On or around March 14, 2024, at approximately 1:00 a.m., Plaintiff's Chevrolet Camaro was stolen from her home located in Irvine, California.

49.     Upon information and belief, an unknown thief was able to hold up a device to Plaintiff's front door (close to where her keys were hanging) to transmit the key fob's signal to a cloning device, which was subsequently used to trick the Plaintiff's car into thinking the authentic key fob was nearby. This resulted in the unknown thief being able to gain entry and start to Plaintiff's vehicle, without detection.

50.     Indeed, the individual(s) who stole Plaintiff's Chevrolet Camaro were able to break into it without setting off its alarm system.

51.     Following the theft, Plaintiff immediately filed a police report with the Irvine Police Department indicating that her Chevrolet Camaro had been stolen.

52.     As of the date of the filing of this Complaint, Plaintiff has not recovered her Chevrolet Camaro.

53.     Plaintiff has been forced to incur costs associated with rideshare services and alternative transportation due to the inability to use her vehicle.

54.     The hackable key fob system on Plaintiff's Chevrolet Camaro and the other Class Vehicles compromises the security of the vehicle, poses safety risks and other inconveniences as described above, and otherwise impairs the utility and value of the vehicle.

55.     Consequently, if ordinary reasonable consumers had known of the Defect, they naturally would consider it an important and material fact in deciding whether

to purchase or lease a Class Vehicle and/or how much to pay for it.

56.     As a long-time automotive manufacturer, which has likely conducted numerous customer surveys and fielded thousands of complaints and warranty claims from consumers, Defendant was aware that ordinary reasonable consumers generally expect defect-free automobiles when they make a substantial investment to purchase or lease.

57.     Defendant could and should have informed Plaintiff and the Class of the Defect, rather than concealing it and/or failing to warn consumers about the risk of theft. Such information could have been provided through advertising and marketing campaigns; on-vehicle labeling, stickers, and placards; owner manuals; brochures; pamphlets; dealership personnel and agents; the internet and social media outreach; and through full and complete disclosure through recalls.

58.     Such information could easily have been made known to Plaintiff and the Class by Defendant before Plaintiff and the Class purchased their Class Vehicles, such as through their interactions with Defendant's dealership personnel and agents; all the various marketing and advertising Defendant undertake (including through television, internet, social media, sporting events, and other media); by looking at their vehicles, upon which Defendant could have affixed a warning about the Defect which Plaintiff would have necessarily seen by looking and sitting in the vehicle itself; and/or through the mail or email, as Defendant could have sent out—and indeed, regularly do send out—for the many recalls Defendant routinely issues each year.

59.     Despite having knowledge of the Defect as detailed above—knowledge far superior to that of ordinary consumers such as Plaintiff and the Class—Defendant remained silent about the Defect for the Class Vehicles. As a result, the public— including prospective purchasers and lessors like Plaintiff and the Class—were unaware of the Defect at the time they purchased their Class Vehicles.

60.     Defendant intended to mislead, and in fact misled, ordinary reasonable

consumers—including Plaintiff and the Class—through its omissions, active concealment and/or failure to warn of the Defect. Defendant did so with the intent to generate and increase sales of the Class Vehicles, thereby increasing its share of the automobile market and avoiding the expense of reprograming the key fob security systems.

61. The Class Vehicles have a diminished value compared to the price they commanded when purchased or leased by Plaintiff and the Class because disclosure of the Defect would influence the purchasing and leasing decisions of ordinary reasonable consumers, including their valuation and willingness to pay for the Class Vehicles.[23]

62. For over ten years, Defendant's conduct has placed a target on Plaintiff and the other Class Member's vehicles because a thief can easily identify a Chevrolet Camaro, uplock it and steal it (which is exactly what happened to Plaintiff).

63. If an individual is lucky enough to retrieve their vehicle after it is stolen due to the Defect, costs for repair can cost thousands of dollars. Not to mention increased insurance costs and the costs associated with finding alternative transportation.

64. Plaintiff and the Class lost money as a result of Defendant's conduct because they did not receive what they reasonably believed they were paying for due to Defendant's omission, active concealment, and/or failure to warn of the Defect, while Defendant realized a commensurate unearned gain because it did not deliver to Plaintiff and the Class what it reasonably expected to receive in exchange for the money it paid.

65. As a result of Defendant's misconduct, Plaintiff and the Class suffered economic injury at the time of purchasing or leasing their Class Vehicles. Particularly, either they purchased or leased vehicles that they otherwise would not have, or they paid more to own or lease their Class Vehicles than they would have

---

[23] https://www.cars.com/articles/what-affects-my-cars-value-1420680457955/ (last accessed Apr. 12, 2024) (noting reliability can impact a car's value).

paid had the Defect been timely disclosed.

66. Because the existence of the Defect in the Class Vehicles would have been patently material to a reasonable consumer, Plaintiff and the Class would not have purchased or leased the Class Vehicles and/or would not have paid as much for them were the Defect not concealed.

67. Defendant's concealment caused Plaintiff and the Class to pay more for the Class Vehicles than they otherwise would have, or to purchase or lease the Class Vehicles when they otherwise would have chosen not to. Stated differently, absent Defendant's misconduct, Plaintiff and the Class would only have been willing to pay less for the Class Vehicles, if they were willing to purchase or lease them at all.

68. By concealing and not disclosing the Defect, Defendant distorted the true value of every Class Vehicle such that every Plaintiff and Class member received a vehicle of different and substantially lesser value—one with a higher effective cost—than they reasonably believed they were receiving.

69. Stated differently, Plaintiff and the Class surrendered more and acquired less in their transactions than they would have if Defendant had disclosed the Defect. Accordingly, Plaintiff and the Class did not realize the benefit of the bargain in purchasing and leasing the Class Vehicles, and their expectations as ordinary reasonable consumers were not met.

70. In effect, Plaintiff and the Class paid substantially more than the market value represented by the price bargained for, as Plaintiff and the Class bargained on a particular market value for their respective Class Vehicles. Because the Defendant's misconduct resulted in Plaintiff receiving less than they bargained for, Plaintiff and the Class effectively paid a higher price than that reflected in the market price.

71. The cost of every Class Vehicle would have been lower absent Defendant's concealment of the Defect and its related misconduct, and Plaintiff and the Class detrimentally altered their positions and suffered damages in an amount no less than

the difference in value between what Plaintiff and the Class reasonably believed they were paying for and the value of the Class Vehicle they actually received.

72.     In addition to the monetary harms they have suffered, Plaintiff and the Class Members have been deprived of their peace of mind because of the constant fear of being victimized by car theft.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

### **A. The Statute of Limitations Did Not Begin to Run Because Class Members Did Not Discover and Could Not Discover Their Claims Based on Defect**

73.     Plaintiff and the Class had no knowledge of Defendant's misconduct, including the omissions and concealment alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein.

74.     Plaintiff and the Class did not discover, and could not discover, through the exercise of reasonable diligence, the fact that Defendant had manufactured and/or sold the Class Vehicles with the concealed Defect.

75.     The limited, though probative, disclosures and revelations alleged in this Complaint required extensive investigation by counsel who suspected, and then became aware of, the Defect.

76.     Ordinary consumers do not have detailed knowledge of vehicle systems and components, although they are justified in expecting their vehicles to be free of substantial defects like the Defect at issue in this action.

77.     Defendant maintains exclusive control over its proprietary design materials and other technical information that would have revealed the existence and nature of the Defect and the ways in which it manifests when operating a Class Vehicle. Plaintiff and the Class had no access to those materials or to any substitute that ordinary diligence would have revealed and, as a result, they could not reasonably have been expected to discover the Defect.

78.     No information in the public domain at the time of their purchases or leases by Plaintiff and the Class sufficed to reveal Defendant's misconduct earlier,

including its omissions and concealment of the Defect, or the Defect itself.

79. Accordingly, the statute of limitations did not begin to run because Plaintiff and the Class did not discover and could not discover their claims, or, in the alternative, because fraudulent concealment tolled the statute of limitations.

80. Defendant concealed the Defect and has continued to do so up through the date this action was filed. It did and does so to create the false impression in the minds of Plaintiff and the Class that the Class Vehicles were merchantable and that their component parts, including the key fobs technology, were able to perform their intended function safely and reliably.

81. Plaintiff and the Class were justified in not bringing the claims earlier based on Defendant's failure to inform Plaintiff and the Class of the existence, nature, extent, and scope of the Defect or its manifestations in Class Vehicles.

82. For the foregoing reasons, the claims asserted in this action accrued much later than the time Plaintiff and the Class purchased and leased their Class Vehicles, and this action is timely.

**B.    Fraudulent Concealment Tolled the Statute of Limitations.**

83. In the alternative, and based upon the same facts alleged above, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted here.

84. Plaintiff and members of the Class were unaware of the Defect and Defendant's misconduct when they purchased or leased their Class Vehicles.

85. Defendant's affirmative acts and omissions alleged herein were wrongfully concealed and carried out in a manner that precluded detection of both the acts and omissions themselves, and the existence, nature, extent, and scope of the Defect and its manifestations in Class Vehicles.

86. By its very nature, Defendant's misconduct was inherently self-concealing. Vehicle systems and components are subject to regulations and other laws governing their safety and merchantability.

87. Competing car manufactures whose vehicles are similarly defective addressed the defect and offered remedies to injured consumers.[24]

88. Plaintiff and members of the Class reasonably expected the Class Vehicles, including their systems and components, to meet or exceeded such standards.

89. Accordingly, a reasonable person under the circumstances would have no cause to investigate the legitimacy of Defendant's conduct before or after purchasing or leasing a Class Vehicle and would have faced extreme difficulty in discerning the Defect that they had no reason to suspect in the first place.

90. Because the misconduct was both self-concealing and affirmatively concealed by Defendant, Plaintiff and members of the Class had no knowledge of the misconduct, or of any facts or information that would have caused a reasonably diligent person to investigate whether misconduct existed until counsel revealed the Defect to Plaintiff based upon extensive and also recent investigation.

91. For these reasons, the statute of limitations as to Plaintiff's and the Class's claims did not begin to run and has been tolled with respect to the claims that Plaintiff allege in this Complaint and any others that might relate to it.

92. Further, the statute of limitations was tolled as a result of Defendant's purposeful nondisclosure and other misconduct alleged herein, under the fraudulent concealment doctrine.

## <u>CLASS ACTION ALLEGATIONS</u>

93. Plaintiff seeks to certify a National-Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as:

> All persons within the United States who (a) purchased and still own, and/or (b) lease or leased, at least one Class Vehicle.

---

[24] https://www.fleetnews.co.uk/news/range-rover-thefts-fall-after-security-enhanced-with-10m-investment. (last accessed April 3, 2024).

94. Plaintiff seeks to certify a California Subclass pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as:

> All persons within the State of California who (a) purchased and still own, and/or (b) lease or leased, at least one Class Vehicle.

95. Unless otherwise stated, the terms "Class" and "Class Members" refer jointly and severally to the proposed National Class and to the proposed California Subclass.

96. Excluded from the Class is Defendant and its board members, executive-level officers, attorneys, and immediate family members of any such persons; the Court, the Court's immediate family, and the Court staff; and any person who asserts a personal injury or wrongful death claim caused by the Defect.

97. **Numerosity**. In 2023, Chevrolet was ranked as the third top selling automobile company in the United States.[25] In 2023 alone, Chevrolet sold 1,699,244 vehicles.[26] Chevrolet has approximately 2,899 dealerships in all fifty states, as well as three U.S. territories.[27]

98. Of the millions of vehicles sold by Chevrolet in 2023, approximately 31,029 of them were the Camaros.[28] Furthermore, over the last decade more than one million Chevrolet Camaro were sold.[29]

99. Approximately 90 Chevrolet Camaro thefts have already been reported in the

---

[25] https://www.carpro.com/blog/national-auto-sales-numbers-for-all-automakers-in-2023 (last accessed April 3, 2024).

[26] *Id.*

[27] https://www.scrapehero.com/location-reports/Chevrolet-USA/#:~:text=There%20are%202%2C899%20Chevrolet%20dealerships,as%20of%20February%2013%2C%202024 (last accessed April 3, 2022).

[28] https://www.goodcarbadcar.net/chevrolet-camaro-sales-figures/ (last accessed April 3, 2022).

[29] *Id.*

first three months of 2024 in California alone.[30]

100.  Therefore, upon information and belief, the Class is comprised of a sufficiently large group of individuals—believed to be in the tens of thousands, if not more—and thus is so large that it is impracticable to join all members of the Class before the Court as individual plaintiffs.

101.  **Typicality.** Plaintiff is a member of the Class, and brings claims typical of the National Class and California Subclass (which are typical of one another as well) because Plaintiff—like all other Class Members—purchased or leased a Class Vehicle designed, manufactured, marketed, distributed, sold, and/or leased by Defendant.

102.  Plaintiff and each member of the Class received less than the full value of the Class Vehicles due to the Defect and Defendant's uniform omissions and concealment of the Defect. Class members, as ordinary reasonable consumers like Plaintiff, would not have purchased the Class Vehicles or paid as much to own or lease them had Defendant not concealed the Defect, which was unknown to Plaintiff and the Class alike.

103.  Thus, Plaintiff and the Class have all been damaged by Defendant's pattern of misconduct—which is common to all Class members—and have suffered the same economic harms. In other words, Defendant's misconduct is common to all Class Members and constitutes a shared factual nexus of injury to the Class.

104.  Plaintiff and the Class were exposed to the same or substantially similar material omissions regarding the security and merchantability of the Class Vehicles; as ordinary consumers, all shared reasonable and foreseeable expectations regarding the safety and merchantability of the Class Vehicles; and all were harmed by the same omissions—namely, Defendant's concealment of the Defect.

105.  Plaintiff and each Class Member suffered economic damages that are

---

[30] https://www.lapdonline.org/newsroom/key-clone-devices-utilized-in-camaro-thefts-nr24077dc/ (last accessed April 3, 2024).

calculable on a class-wide basis. The claims all arise from a single course of conduct and each Class member would therefore individually bring substantively identical legal and factual arguments to establish Defendant's liability for its misconduct.

106. There are no defenses available that are unique to the Plaintiff.

107. **Commonality & Predominance.** The Class is united by a community of interest in obtaining appropriate remedies, including injunctive relief, repair or replacement of the defective vehicles, restitution, damages, and other available relief designed to redress Defendant's wrongful conduct. This action involves questions of law and fact that are common to the Class that are susceptible to common answers and that predominate over any individual questions specific to any Class Member. These include, but are not limited to the following:

    a. Whether the Class Vehicles contain the Defect;

    b. Whether the Defect constitutes a material fact to an ordinary reasonable consumer;

    c. Whether an ordinary reasonable consumer would have purchased or leased a Class Vehicle had the Defect been disclosed;

    d. Whether an ordinary reasonable consumer would have paid less money to purchase or lease a Class Vehicle had they known of the Defect—and if so, how much less they would have paid;

    e. Whether the Class Vehicles commanded a premium relative to their actual value in light of the undisclosed Defect;

    f. Whether and when Defendant had actual or constructive knowledge of the Defect;

    g. Whether Defendant had and has a duty to disclose the Defect to the Class and whether it fraudulently concealed the Defect;

    h. Whether Defendant breached any or all applicable warranties with respect to the Class Vehicles;

    i. Whether Defendant breached other duties or violated other applicable

laws by omission, including concealment of the Defect;

j. Whether Defendant breached obligations to provide timely repairs for the Class Vehicles;

k. Whether and to what extent Defendant is liable for damages, restitution, diminution in value, out-of-pocket expenses, and other losses incurred by the Class as a result of the Defect;

l. Whether Defendant should be declared legally and financially responsible for notifying the Class of the Defect and of their right to whatever relief to which the Class is entitled; and

m. Whether and to what extent other equitable or injunctive relief is appropriate to remedy the harms caused by Defendant's misconduct and to prevent further such harms.

108. These common issues will drive the resolution of the litigation in that their determination will resolve in one stroke issues that are central to the validity of each Class Member's claims.

109. The factual and legal issues identified above:

a. Remain common to the Class;

b. Arise from a common course of conduct and systemic policy decisions made by Defendant;

c. Predominate in number and importance over questions that may not be common to the class; and

d. Preclude neither class-wide calculation of damages nor the methodological determination of how such damages should be allocated among Class members.

110. **Adequacy of Representation.** Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members. Plaintiff commits to protecting the interests of the Class without exercising personal interest or otherwise acting in a manner inconsistent with the best interests of the

Class generally.

111. Plaintiff has retained attorneys with exceptional experience in complex litigation, including extensive class action experience and experience in handling consumer protection cases and product liability cases, including automobile defect claims. The firms and lead counsel for the firms retained by Plaintiff also have substantial trial experience, individually and collectively. Plaintiff and her attorneys will responsibly, ethically, and vigorously advocate on behalf of the Class, and Plaintiff's counsel have ample resources to do so.

112. **Superiority.** This class action is superior to the other means available to the Class to obtain relief because:

   a. The damages suffered by individual Class Members are relatively small compared to the burden and expense of individual litigation of the claims described here against Defendant so that making the Class whole in the absence of a class action is unlikely and impracticable;

   b. Class Members accordingly have relatively less interest in individually controlling the prosecution of separate actions (if they even are aware of the issue); and it cannot be said that the interests of individuals pursuing individual cases in conducting separate lawsuits is so strong as to call for denial of a class action;

   c. Denial of class treatment runs the risk of establishing incompatible standards of conduct for Defendant, discouraging the prosecution of meritorious but relatively small claims, and it may result in adjudications which would be dispositive of the interests of other Class Members who are not parties to the adjudication, or otherwise substantially impair the ability of Class Members (and Defendant) to protect their rights and interests;

113. Defendant has no facially plausible interest in defending against separate, geographically dispersed claims and, in fact, that would be more burdensome to

Defendant than defending against all potential claims in a single forum and proceeding.

114. Likewise, the judicial system has no interest in burdening a number of courts when the claims of a cohesive class can be fairly and efficiently concentrated and managed by this Court.

115. The claims are indeed manageable because they are governed by one state's law.

116. Further, the class procedure is designed to result in the fair, uniform, and efficient adjudication of the sorts of claims presented by this Complaint.

117. Defendant's misconduct impacts all Class Members, whose losses are capable of calculation on a Class-wide basis.

118. **Injunctive and Declaratory Relief.** Defendant has acted or refused to act on grounds generally applicable to the Class, making the award of equitable relief and/or restitution appropriate to the Class in its entirety.

119. Certification of particular issues would move the litigation forward efficiently and would save money, time, and judicial resources for all involved, regardless of whether the action as a whole might be certified.

## FIRST CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act ("CLRA")

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (On Behalf of Plaintiff and the California Subclass)

120. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

121. Defendant is a "person" under California Civil Code § 1761(c).

122. Plaintiff is a "person" under California Civil Code § 1761(c).

123. Plaintiff and the Subclass are "consumers" under California Civil Code § 1761(d) because they purchased Class Vehicles primarily for personal, family, or household use.

124.     The purchase of Class Vehicles by Plaintiff and the Subclass, constitute "transactions" within the meaning of California Civil Code § 1761(e).

125.     The Class Vehicles are "goods" within the meaning of California Civil Code § 1761(a).

126.     Defendant's violations of the CLRA occurred repeatedly in Defendant's trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Class Vehicles.

127.     Defendant violated California Civil Code § 1770(a)(5) by representing that the Class Vehicles had a characteristic that they did not actually have—i.e., knowingly omitting the fact that Class Vehicles included a Defect, making Class Vehicles, and their material security systems, unfit for the ordinary purposes for which they were used.

128.     Defendant violated California Civil Code § 1770(a)(7) by representing that the Class Vehicles were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard.

129.     Defendant had a duty to disclose the Defect because:

    a. The exclusive and reliable operation and functionality of the Class Vehicles' key fob is central to the secure and reliable function of the Class Vehicles as a whole, including preventing and deterring thieves;

    b. Defendant was in a superior position to know that the Defect existed as the designers, manufacturers, assemblers, distributors, marketers, and warrantors of the Class Vehicles, and Defendant remains in that position as to the vast majority of unwitting Class Members;

    c. Plaintiff and the Subclass were not involved in the design or manufacture of the Class Vehicles, and as such could not be expected to learn or know about the existence and cause of the Defect;

    d. Defendant knew that Plaintiff and the Subclass lacked access to the design and manufacturing materials necessary to understand the

existence and cause of the Defect; and,

e. Defendant knew that ordinary reasonable consumers would expect the Class Vehicles to be free of significant defects central to the security and safety of the vehicles such that the Defect would constitute a material fact in any purchasing or leasing decision, i.e., it would have influenced any and every reasonable consumer's purchasing or leasing decision, including whether and how much to pay to purchase or lease a vehicle.

130. Ordinary reasonable consumers have no general appreciation of the components and subcomponents of vehicles and vehicle systems but would expect the vehicle to be well-designed and to offer a reasonable level of safety and reliability when used as intended.

131. Every ordinary and objectively reasonable consumer would expect the Class Vehicles to be free of significant defects central to the security of the vehicles and thus implicitly and necessarily would hold such an expectation as to the ignition system and its component parts.

132. The exclusive, reliable, and proper functioning of the key fob is a material component of a vehicle transaction because it is required to prevent thieves from easily stealing the Class Vehicles. Accordingly, every ordinary and objectively reasonable consumer would have considered the Defect to be an important and material fact that would have substantially influenced their decision of whether to purchase or lease a Class Vehicle and how much to pay, if anything.

133. Every ordinary and objectively reasonable consumer acting reasonably under the circumstances would have been deceived by Defendant's misconduct, including its concealment of the Defect.

134. As a direct, foreseeable, and proximate result of Defendant's deceptive practices, Plaintiff and every member of the Class:

a. Purchased or leased a Class Vehicle they otherwise would not have

purchased or leased or paid more than they otherwise would have;

    b. Thereby suffered an ascertainable loss of money, property, and value of the Class Vehicles; and

    c. Suffered actual damages and other economic harms because of the latent Defect, including the losses described elsewhere in this Complaint.

135. Due to Defendant's original and continuing misconduct alleged throughout this Complaint, Plaintiff and the California Subclass are entitled, pursuant to California Civil Code § 1780, to injunctive, declaratory, and equitable relief, including an order, judgment, and other judicial action, decision, or proclamation:

    a. Declaring that the Class Vehicles' key fob systems as defective or absent;

    b. Declaring that Defendant's conduct violated the CLRA;

    c. Declaring that Plaintiff and the Class are entitled to reimbursement or restitution for money spent on the Class Vehicles; and

    d. Enjoining Defendant from continuing to violate the CLRA.

136. On April 12, 2024, Plaintiff, through counsel, sent a notice of violations and demand for corrective action to Defendant pursuant to Cal. Civ. Code § 1782(a) (the "CLRA Demand"), via certified mail, return receipt requested.

137. Plaintiff and the California Subclass are entitled to, and seek, public injunctive relief prohibiting such conduct in the future.

138. Attached hereto as **Exhibit A** is the venue affidavit of Plaintiff pursuant to California Civil Code § 1780(d).

139. Pursuant to California Civil Code § 1782(d), Plaintiff reserves the right to amend the Complaint to seek damages and attorneys' fees as to this cause of action should Defendant, within thirty (30) days of receiving the CLRA Demand, fail to provide Plaintiff with an appropriate correction, repair, replacement, or other remedy, and/or offer no relief or cure for the Class Members.

# SECOND CAUSE OF ACTION

## Violations of California's Unfair Competition Law ("UCL"),

## (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

## (On Behalf of Plaintiff and the California Subclass)

140.   Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

141.   Plaintiff brings this cause of action against Defendant on behalf of themselves and the California Subclass for violation of the UCL.

142.   The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice.

143.   The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—only that such practices occurred.

144.   Defendant's acts, omissions, practices, and non-disclosures alleged throughout this Complaint constitute business acts and practices.

145.   Defendant's acts, omissions, practices and non-disclosures alleged throughout this Complaint constitute unlawful, unfair, and fraudulent business acts and practices because it has the capacity to deceive reasonable consumers, including Plaintiff and the Subclass, as to the benefits and effectiveness of the Class Vehicles and, thereby, the Class Vehicles' security system.

146.   Defendant had a duty to disclose the Defect based on its superior knowledge as the designers, manufacturers, sellers, marketers, and/or warrantors of the Class Vehicles, and as further alleged in this Complaint.

147.   Defendant violated Cal. Bus. & Prof. Code § 17200 by engaging in "unfair competition," including through "unlawful, unfair, or fraudulent business acts or practices" and "unfair, deceptive, untrue, or misleading advertising." Defendant's violations include:

      a.   Advertising, marketing, distributing, selling, and leasing the Class

Vehicles when Defendant knew those vehicles were defective and unable to reliably and safely perform their intended use;

b. Failing to disclose the true nature, scope, and extent of the Defect; and

c. Concealing material facts regarding the Class Vehicles—i.e., that their key fobs were defective and unable to reliably and safely perform their intended use.

148. **Unlawful Prong:** Defendant's misconduct is "unlawful" under the UCL because it violates:

a. California's common law prohibition against fraudulent concealment;

b. The CLRA;

c. The Song-Beverly Consumer Warranty Act ("SBCWA");

d. The Transportation Recall Enhancement, Accountability, and Documentation Act (the "TREAD Act"), 49 U.S.C. 30101, *et seq.*, by failing to timely inform NHTSA of the nature, extent, and scope of the Defect and by allowing the Class Vehicles to continue to be sold, leased, and used in a dangerous and defective condition; and

e. The implied warranty provisions of Cal. Comm. Code § 2313.

149. **Unfair Prong**: Defendant's acts and omissions constitute "unfair" business practices under the UCL because:

a. Defendant engaged in a misleading and deceptive practice of knowingly or intentionally selling the Class Vehicles, all of which have the Defect;

b. Defendant's acts and omissions offend an established public policy of transparency in the sale or lease of consumer vehicles, and it engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers; and

c. The harm to Plaintiff and the Subclass grossly outweighs the utility of Defendant's practices.

150. **Fraudulent Prong:** Defendant's deceptive practices constitute fraudulent business acts or practices because it deceived Plaintiff and are highly likely to deceive members of the consuming public into purchasing a Class Vehicle that, unbeknownst to Plaintiff and the California Subclass, were dangerously defective and unsuitable for its intended purpose.

151. Defendant has engaged in deceptive, misleading, unfair, unconscionable, and fraudulent acts and practices that have caused actual damages to Plaintiff and the California Subclass members, as described herein.

152. Defendant's concealment of the Defect and its false, deceptive, misleading, and confusing omissions would be material to any ordinary, average, and objectively reasonable consumer's decision whether to buy or lease a Class Vehicle, given that the Defect is central to the vehicles' functionality, and it pertains to the secure and reliable operation of the Class Vehicles. No reasonable consumer, including Plaintiff, would have purchased or leased a Class Vehicle but for Defendant's acts, practices, omissions, and active concealment of the Defect.

153. Any ordinary, average, objectively reasonable consumer acting reasonably in the circumstances would have been deceived by Defendant's acts and practices, including the omissions described herein.

154. As a direct, foreseeable, and proximate result of Defendant's deceptive practices, Plaintiff and every member of the California Subclass:

    a. Purchased or leased a vehicle they otherwise would not have purchased or leased or paid more than they otherwise would have;

    b. Thereby suffered an ascertainable loss of money, property, and value of the Class Vehicles; and

    c. Suffered actual damages and other economic harms because of the latent Defect, including the losses described in this Complaint.

155. Due to Defendant's original and continuing misconduct alleged throughout this Complaint, Plaintiff and the California Subclass are entitled to injunctive,

declaratory, and equitable relief, including an order, judgment, and other judicial action, decision, or proclamation:

  a. Declaring that the Class Vehicles are defective;

  b. Declaring that Defendant's conduct violated the UCL;

  c. Declaring that Plaintiff and the California Subclass are entitled to reimbursement or restitution for money spent on the Class Vehicles; and

  d. Enjoining Defendant from continuing to violate the UCL and, in accordance with Bus. & Prof. Code § 17203, enjoining Defendant to commence a corrective advertising campaign.

156.   Accordingly, Plaintiff and the California Subclass demand all available relief including attorney's fees and costs; all available equitable, restitution, and injunctive relief; and other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

157.   Plaintiff alleges, in the alternative to her other causes of action, that she lacks an adequate remedy at law because monetary damages alone fail to make the Class Vehicles safe for continued operation. To do so, Plaintiff requires that the Defect be cured—and the cost of doing so, including parts and labor, potentially exceeds the amount of monetary damages suffered as a result of the diminution in value.

## THIRD CAUSE OF ACTION

### Violations of the Song-Beverly Consumer Warranty Act ("SBCWA")

### (Cal. Civ. Code §§ 1790, *et seq.*)

### (On Behalf of Plaintiff and the California Subclass)

158.   Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

159.   Plaintiff brings this cause of action against Defendant individually and on behalf of the California Subclass for Violations of the SBCWA.

160.   California Civil Code § 1792 provides that, unless properly disclaimed, every

sale of consumer goods is accompanied by an implied warranty of merchantability. Defendant did not at any time properly disclaim the warranty.

161. The Class Vehicles are "consumer goods" as defined in California Civil Code § 1791(a).

162. Plaintiff and the Subclass are "buyers" as defined in California Civil Code § 1791(b).

163. Defendant is the "manufacturers" of the Class Vehicles under California Civil Code § 1791(j).

164. Defendant impliedly warranted that the Class Vehicles, and particularly their security systems, were fit for the ordinary purposes for which they were used and without defect.

165. This warranty formed the basis of the bargain with regard to the Subclass members' purchase and lease of Class Vehicles.

166. Defendant knew, or at least should have known, that consumers expected the Class Vehicles to be secure and free from any defects, and as such, impliedly warranted to Plaintiff and the Class that the Class Vehicles were "merchantable" under California Civil Code §§ 1791.1(a) and 1792.

167. The Class Vehicles were and are not merchantable, and as such, Defendant breached its implied warranty, because:

     a. The Class Vehicles do not have the quality that a buyer would reasonably expect due to the Defect;

     b. The Defect renders the Class Vehicles susceptible to theft, break-ins, and physical damage;

     c. The Class Vehicles have a latent Defect that poses an unreasonable risk of manifesting and that in fact manifest in ways that pose a constant risk to security and compromise reliability;

     d. Defendant concealed the existence of the Defect; and

     e. Defendant has refused and failed to provide the needed repairs and

replacements to address and correct the Defect.

168. Plaintiff and the Subclass received the Class Vehicles in a condition that substantially diminishes their value, and which compromises the Class Vehicles' security to prevent vehicle theft. As a result, Plaintiff is entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their vehicles.

169. Defendant's breach of warranties proximately caused Plaintiffs and the Class, collectively, to suffer damages.

170. Accordingly, Plaintiff, individually and on behalf of the Subclass seeks all available monetary damages (including compensatory and/or liquidated damages and punitive damages); attorney's fees and costs; all available equitable, restitution, and injunctive relief; and all other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

## FOURTH CAUSE OF ACTION

### Breach of Implied Warranty

### (On behalf of Plaintiff and the California Subclass)

171. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

172. Plaintiff brings this count individually and on behalf of the California Subclass for breach of implied warranty.

173. The Class Vehicles are "goods" as defined in Cal. Com. Code §§ 2105(1) and 10103(a)(8).

174. Plaintiff and the Subclass members are "buyers" and/or "lessees" of the Class Vehicles as defined in Cal. Com. Code §§ 2103(1)(a) and 10103(a)(14).

175. Defendant is a "merchant," "seller," and "lessor" as define in Cal. Com. Code §§ 2104(1), 10103(c), and 10103(a)(16).

176. California law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to

be used pursuant to Cal. Com. Code §§ 2314 and 10212.

177. The Class Vehicles are not merchantable, and as such Defendant breached its implied warranty, because:

    a. The Class Vehicles do not have the quality that a buyer would reasonably expect due to the Defect;

    b. The Defect renders the Class Vehicles susceptible to theft, break-ins, and physical damage;

    c. The Class Vehicles have a latent Defect that poses an unreasonable risk of manifesting and that in fact manifest in ways that pose a constant risk to security and compromise reliability;

    d. Defendant concealed the existence of the Defect; and

    e. Defendant has refused and failed to provide the needed repairs and replacements to address and correct the Defect.

178. Accordingly, Plaintiff, individually and on behalf of the Subclass, seeks all available monetary damages (including compensatory and/or liquidated damages and punitive damages) in an amount no less than the difference in value between what Plaintiff and the California Subclass reasonably believed they were paying for and the value of the vehicle they actually received; attorney's fees and costs; all available equitable, restitution, and injunctive relief; and all other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

## FIFTH CAUSE OF ACTION

### Common Law Fraudulent Concealment

### (On Behalf of Plaintiff, the National Class and the California Subclass)

179. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

180. Plaintiff brings this count against Defendant on behalf of herself and the Class for fraudulent concealment based on the particular misconduct alleged throughout this Complaint and elaborated upon below.

181. The state laws involved do not conflict with one another in a case-dispositive manner and they involve the same key elements: a duty to disclose a material fact, intentional concealment, and resulting damage.

182. **Duty.** Defendant had and continues to have a duty to disclose the existence, nature, and extent of the Defect because:

   a. The safe and reliable operation and functionality of the Class Vehicles' prevents thieves from bypassing a vehicle's security system and steal the vehicle. The key fob is essential to the control of the vehicle;

   b. Defendant were in a superior position to know that the Defect existed as the designers, manufacturers, assemblers, distributors, marketers, and warrantors of the Class Vehicles and Defendant remain in that position as to the vast majority of unwitting Class Members;

   c. As Defendant knew, Plaintiff and the Class lacked access to Defendant's proprietary and other non-public information, while information in the public domain was insufficient to alert a reasonably diligent consumer to the existence of the Defect, thus preventing Plaintiff and the Class from knowing about the existence of the Defect or its manifestations during operation of the Class Vehicles;

   d. Plaintiff and the Class were not involved in the design or manufacture of the Class Vehicles, and as such could not be expected to learn or know about the existence and cause of the Defect;

   e. Defendant knew that Plaintiff and the Class lacked access to the design and manufacturing materials necessary to understand the existence and cause of the Defect;

   f. Defendant knew that ordinary reasonable consumers would expect the Class Vehicles to be free of significant defects central to the function and security of the vehicles such that the Defect would constitute a material fact in any purchasing or leasing decision, i.e., it would have

influenced any and every reasonable consumer's purchasing or leasing decision, including whether and how much to pay to purchase or lease a vehicle; and

g. Defendant's public pronouncements and representations in marketing and labeling the Class Vehicles were uniformly positive and consistent in terms of theme and content, thus giving rise to a duty to tell the whole truth about the Class Vehicles.

183. **Concealment.** Defendant concealed the Defect by:

a. Knowingly selling and profiting from vehicles with the Defect while remaining silent as to Defect with the intent and purpose of ensuring that prospective customers would remain unaware of the Defect and would purchase or lease the Class Vehicles without consideration of how the Defect affected the value of the Class Vehicles;

b. Purposefully withholding the existence of the Defect from dealerships, retailers, service facilities, and other businesses that sell, inspect, service, and maintain vehicles so that the public would remain ignorant of the Defect and continue to purchase the Class Vehicles;

c. Failing to recall the Class Vehicles or to otherwise alert the public to the existence, nature, and extent of the Defect; and

d. Failing to disclose the cause of various manifestations of the Defect when consumers experienced such problems, as alleged above.

184. **Causation.** Defendant's deceptive, misleading, unfair, unconscionable, and fraudulent acts and practices have directly and foreseeably caused damages to Plaintiff and the Class, as alleged in this Complaint. In particular:

a. Defendant's intentional concealment of the Defect and Defendant's false, deceptive, misleading, and confusing representations and omissions would influence any ordinary, average, and reasonable consumer's decision whether to buy or purchase a Class Vehicle, given

that the Defect pertains to the safety and security of the Class Vehicles. No reasonable consumer, including Plaintiff, would have purchased or leased a Class Vehicle but for Defendant's acts, practices, omissions, and active concealment of the Defect, as described throughout this Complaint;

b. Any ordinary and objectively reasonable consumer acting reasonably in the circumstances would have been deceived by Defendant's acts and practices, including its concealment of the Defect; and

c. As a direct, foreseeable, and proximate result of Defendant's deceptive practices, Plaintiff and the Class have sustained economic injury at the time of purchase or lease as well as other economic losses alleged above.

185. Accordingly, Plaintiff and the Class demand all available relief including all available compensatory and/or liquidated damages in an amount no less than the difference in value between what Plaintiff and the Class reasonably believed they were paying for and the value of the vehicle they actually received; attorney's fees and costs; all available equitable, restitution, and injunctive relief; and other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

186. Additionally, Defendant's intentional acts of deceit were carried out deliberately, maliciously, and wantonly, knowing full well—and therefore intending—that its deceit would cause economic harm to Plaintiff and the Class for its own aggrandizement. Defendant knew that its misconduct, including its concealment of the Defect, posing a safety risk to Plaintiff and the Class; but it carried out its fraudulent scheme because doing so not only saved it money, but increased its profits and its market share. Defendant's reprehensible conduct thus warrants the imposition of punitive damages to punish it and to deter it and others from engaging in the same or similar schemes in the future.

//

## EIGHTH CAUSE OF ACTION

### Common Law Unjust Enrichment

### (On Behalf of Plaintiff, the National Class and the California Subclass)

187. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

188. Plaintiff brings this claim individually and on behalf of the members of the proposed Class.

189. The elements of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another.

190. Plaintiff and Class Members conferred non-gratuitous benefits upon Defendant by essentially paying more for Class Vehicles that were, upon information and belief, worth less than what was paid given the Defect.

191. Plaintiff and Class Members allege that Defendant owe them money for the conduct alleged herein.

192. An undue advantage was taken from Plaintiff's, Class Members' and Sub-Class Members' lack of knowledge of the deception, whereby money was extracted to which Defendant had no legal right. Defendant is therefore indebted to Plaintiff and Class Members in a sum equal to the difference between what Plaintiff and Class Members paid for their Class Vehicles and what the Class Vehicles were actually worth.

193. Defendant is therefore indebted to Plaintiff and Class Members in a sum certain for money had and received by Defendant, which Defendant in equity and good conscience should not retain.

194. Defendant is therefore liable to Plaintiff and Class Members in the amount unjustly enriched.

195. Defendant's retention of any benefit collected directly and indirectly from Plaintiff and Class Members violates principles of justice, equity, and good conscience. As a result, Defendant has been and continues to be unjustly enriched.

196. Plaintiff and Class Members are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be required to disgorge to Plaintiff and Class Members the benefits it has unjustly obtained.

197. Defendant accepted or retained such benefits with knowledge that the rights of Plaintiff, Class Members and Subclass Members were being violated for financial gain. Defendant has been unjustly enriched in retaining the revenues and profits from Plaintiff, Class Members and Subclass Members, which retention under these circumstances is unjust and inequitable.

198. As a direct and proximate result of Defendant's unlawful practices and retention of the monies paid by Plaintiff and Class Members in excess of what was promised, Plaintiff and Class Members have all suffered concrete harm and injury, including, but not limited to monetary loss in connection with their payments made to Defendant.

199. Defendant's retention of the non-gratuitous benefits on it by Plaintiff and Class Members would be unjust and inequitable.

200. Plaintiff and Class Members are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant in a manner established by this Court.

201. Plaintiff and Class Members request the Court enter an order awarding them restitution, rescission, and or/damages, and that they are entitled to recover their reasonable attorneys' fees.

202. Plaintiff and Class Members therefore also seek pre-and-post judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Civ. Proc. Code § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## **PRAYER FOR RELIEF**

203. Plaintiff prays that judgment be entered against Defendant as follows:

    a. That this action be certified as a class action;

    b. That Plaintiff be appointed as the representative of the Class;

    c. That Plaintiff's attorneys listed below be appointed Class Counsel;

    d. For an order declaring Defendant's conduct to be unlawful;

    e. For an order compelling Defendant to make restitution to Plaintiff and the Class in an amount to be proven at trial;

    f. For actual, compensatory, statutory and/or liquidated damages;

    g. For pre- and post-judgment interest at the legal rate;

    h. For injunctive and other equitable relief as alleged herein and as necessary to protect the interests of Plaintiff and members of the Class, and to prohibit Defendant from engaging in the unlawful, unfair, deceptive and fraudulent acts described above, including public injunctive relief pursuant to Cal. Bus. & Prof. Code § 17204;

    i. For an order that Defendant engage in a corrective advertising campaign;

    j. For an order of restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the members of the Class as a result of its unlawful, unfair, and fraudulent business practices;

    k. For injunctive relief pursuant to California Code of Civil Procedure § 1780;

    l. For costs of this action and out-of-pocket expenses;

    m. For attorneys' fees, pursuant to, *inter alia*, the common fund doctrine and/or Cal. Civ. Proc. Code § 1021.5; and

    n. For such other and further relief that the Court deems available and proper.



## JURY DEMAND

Plaintiff, individually and on behalf of the National Class and the California Subclass, hereby demands a trial jury of all issues triable by right.

Dated: April 12, 2024                Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: */s/ Abbas Kazerounian, Esq.*
     Abbas Kazerounian, Esq.
     *Attorneys for Plaintiff*